[The opinions reported in this SUPPLEMENT were held back upon petitions for re-hearing, and did not come into my hands in time for insertion in their chronological order.—REPORTER.]

## ELLSWORTH v. CORDREY.

1. **Tax Sale and Deed**: AGENT OF OWNER CANNOT ACQUIRE TAX TITLE: NOR CAN HIS ASSIGNEE. A party charged with the payment of the taxes on land, as agent, cannot acquire a tax title to his principal's land, either by purchasing the land himself at tax sale, or by the assignment to him of a certificate of purchase obtained by another; nor can he, by assigning his certificates, confer upon his assignee any greater rights than he himself has.

2. ———: REDEMPTION AFTER DEED MADE: INACCURATE STATEMENT OF TREASURER: NO RELIEF IN EQUITY. The fact that the county treasurer gave defendant inaccurate information as to the amount required to redeem his land from a tax sale, was no excuse for his failure to redeem, nor is it ground for relief in equity after the execution of a tax deed.

3. ———: ———: DEFECTIVE NOTICE OF EXPIRATION OF TIME OF REDEMPTION. The affidavit of the publisher of a newspaper of the publication of notice of the expiration of the time for redemption of land from tax sale, is not a compliance with section 894 of the Code; (*American Missionary Association v. Smith*, 59 Iowa, 704;) nor is such defect cured by the additional affidavit of the holder of the certificate that publication was made for three consecutive weeks, without stating *when* the publication was made. Such proof of notice does not limit the time within which the owner may redeem.

4. ———: PURCHASE BY AGENT: REDEMPTION BY OWNER: TERMS OF. Although an agent cannot acquire a tax title to land as against his principal, yet the purchase by the agent is not void, but voidable only; and before the principal can redeem from the agent, or his assignee to whom a deed has been made, and who has paid the subsequent taxes, he must pay, on account of such subsequent taxes, the same amount which he would have to pay the treasurer in case the taxes had not been paid by the claimant under the tax title. See *Everett v. Beebe*, 37 Iowa, 452; *Light v. West*, 42 Id., 138; *Besore v. Dosh*, 43 Id , 211.

*Appeal from Hardin Circuit Court.*

TUESDAY, JUNE 12, 1882.

THIS is an action in equity, brought by the plaintiff to quiet

his title to 120 acres of land in Wright county. The plaintiff's claim of title is based upon certain tax sales and treasurer's deeds. The defendant was the owner of the land under the patent title, and claims that the plaintiff's tax deeds are void. The cause was referred to a referee to try and determine. A report was made to the court, which awarded to, the plaintiff forty acres, and to the defendant eighty acres of the land. Exceptions were filed to the report, and the court modified the same by giving to the plaintiff eighty acres, and to the defendant forty acres. Both parties claim all of the land, and both appeal.

*S. M. Weaver* and *T. H. Milner*, for plaintiff.

*Brown & Carney*, for defendant.

ROTHROCK, J.—I. It appears from the evidence that the defendant was a non-resident of the state, and R. H. Eastman

1. TAX sale and deed: agent of owner cannot acquire tax title: nor can his assignee.

& Co. were land and tax-paying agents at Clarion, the county seat of Wright county, and had defendant's name on their customers' books as one of those for whom they acted as agents in the payment of taxes, and that the land in controversy was assessed in the name of the defendant. A sale of the land was had for the taxes of the year 1874, and Eastman & Co. made redemption from that sale with money sent to them by defendant for that purpose. The firm notified the defendant of the amount of the taxes for the year 1875, and the evidence as to whether the defendant remitted the amount for that year is conflicting and not at all satisfactory. The taxes for that year were not paid, however, and in October, 1876, the land was sold for the tax of 1875. One forty-acre tract was purchased by George A. McKay, a member of the partnership of Eastman & Co., another was purchased by one Parmlee, and the other by one Zelie. Parmlee assigned his certificate of purchase to McKay, and he assigned that, and the one for the forty purchased by himself, to the plaintiff, and Zelie

also assigned his certificate to the plaintiff, and the plaintiff's title is based upon deeds issued upon these certificates. It is claimed by the defendant that the purchase by McKay, and the purchase of the Parmlee certificate by McKay, conferred no right on him which he could assign to Ellsworth, because, at the time of the tax sale, McKay was the agent of the defendant in the payment of his taxes, and could acquire no rights as against him. It is conceded that a party charged with the payment of taxes, as agent, cannot acquire a tax title to his principal's land. But plaintiff contends that McKay was not the agent of the defendant; that, if the defendant failed to place the money in the hands of Eastman & Co. to pay the taxes, the employment or agency then ceased.

But we think the evidence shows pretty clearly that the agency existed at the time of the sale, and afterwards. It appears that the firm of Eastman & Co. was dissolved in April, 1876, and that McKay continued the business, and paid the tax of 1876 on the land with money furnished by the defendant, and sent him a receipt, and it does not appear that he then, or at any other time, although in correspondence with the defendant, notified him that he or any other person had purchased his land at tax sale in October, 1876. In view of these undisputed facts, it ought to go without saying, that any right acquired by McKay was a fraud upon the defendant, no matter whether he had the money in his hands to pay the taxes at the time of the sale or not. This disposes of the case as to the two forties purchased at the tax sale by McKay and Parmlee. The plaintiff can take no greater right than McKay had, and the title to this part of the land will be quieted in the defendant.

II. The rights of the parties in the forty-acre tract purchased at the tax sale by Zelie remain to be determined. It does not appear that there was any collusion between McKay and Zelie, and, even if the money to pay the tax for which the land was sold was sent by the defendant to McKay before the sale, that fact could not affect any right of Zelie.

It is claimed by defendant that he should be permitted to redeem from the sale, because, long after the sale, and when advised thereof, the treasurer of the county gave the defendant false information as to the amount necessary to redeem. It is true that, in answer to letters of inquiry from the defendant, the treasurer, in October, 1879, and in December of the same year, made statements of the amount necessary to redeem the land. In one of these letters it was stated that it would cost about sixty dollars to redeem, and if that was too much the balance would be returned, and if not enough the defendant would be notified. There was nothing in these letters which should have deceived the plaintiff, even if amounts were not accurately stated. He still knew that his land had been sold, and an inaccurate statement of the amount necessary to redeem is not a ground for equitable relief. He should have made redemption, and he had no reason to believe that any one would redeem for him.

2. ——: redemption after deed: inaccurate statement of treasurer: no relief in equity.

III. Next, it is urged that the notice of the expiration of the time for redemption, as provided in section 894 of the Code, was insufficient to authorize the making of the tax deed by the treasurer. The evidence shows that the sale was made on the second day of October, 1876. It appears from an affidavit made by the publisher of the *Wright County Monitor*, a newspaper published in Wright county, that a notice was published in that paper. We have held that the affidavit of the proprietor of a newspaper, that the publication was made, is not a compliance with section 894 of the Code. *American Missionary Association v. Smith*, 59 Iowa, 704. In the case at bar, the holder of the certificate of sale made affidavit that the publication was made for three consecutive weeks, but this affidavit does not state when the publication was made. The period for redemption does not expire until ninty days after the proper notice for expiration of the time for redemption has been given, and proper proof of service has been made. As there

3. ——: ——: defective notice of expiration of time of redemption.

is no such proof of service on file with the treasurer, the period for redemption has not yet expired, and the defendant is entitled to redeem the forty acres now under consideration, by paying the amount necessary to redeem from the sale, as provided by law.

IV. It having been determined that the sales of the eighty acres to McKay and Parmlee were invalid, and that the treasurer's deeds conferred no title upon the plaintiff, we are required to fix the rights of the parties as to the taxes subsequently paid upon the land. And here we may say that we think the evidence does not establish the fact that the defendant had in the hands of McKay, his agent, sufficient money to pay the taxes upon the land for the year 1875. While McKay's agency existed, he could not acquire a tax title as against his principal, yet his purchase at the tax sale was not void, but voidable. In such case, the right and claim of the state and county to the taxes passed to him and to his aisignee, and the defendant should pay to the plaintiff the same amount he would now have to pay to the treasurer, in case the taxes had not been paid by the claimant under the tax sale. *Everett v. Beebe*, 37 Iowa, 452; *Light v. West*, 42 Id., 138; *Besore v. Dosh*, 43, Id., 211.

*4. ——: purchase by agent: redemption by owner: terms of.*

The order made in the court below, apportioning the costs in that court, will not be disturbed. Upon the plaintiff's appeal the cause will be affirmed, and upon the defendant's appeal the decree will be reversed as to all the land, upon payment of the amount necessary to redeem the forty acres purchased by Zelie, and upon the payment of the proper amount of taxes, interest and penalties upon the other eighty acres in controversy; and plaintiffs will pay the costs in this court.

REVERSED.